This is Dawn Auten, formerly known as Dawn Barnett, v. Larry Nord, in Central Illinois Orthopedic Surgery. We have with the appellant, Karen Kendall, and to the appellee, James Ginsky. Ms. Kendall, will you be sharing your argument? No, Your Honor. Please proceed. If it please this Court and Counsel, my name is Karen Kendall. Today, before this Court, I represent Dr. Larry Nord and Central Illinois Orthopedic Surgery. Trial attorney, Pete Brandt, is with me at the Counsel table. This case arises out of an automobile accident that occurred here in Springfield. The date of the accident was December 11, 2003. Two days later, Dr. Nord performed surgery on Dawn Auten. The surgery that he performed at that time is not at issue in this case. When the case was tried, it was tried against a defendant driver, Christine Franklin, who coincidentally was a law school classmate of mine, but I haven't seen her since then. I'm sorry, who was? Christine Franklin. It was Christine Pablis. Yeah, I just saw her the other day. Who admitted negligence during the trial. The case had multiple medical defendants originally, but finally ended up going to trial only against Dr. Nord. And the allegations of medical negligence against Dr. Nord and the other medical defendants was the failure to diagnose a dislocated right index finger. The finger was diagnosed, but the contention was that it was a late diagnosis. We have a number of issues which we have raised with our appellants brief. I do not anticipate that I will have time to cover all of those in our short time at oral argument, and so I will stand on any issue in the brief which I am not able to address at oral argument. The first issue actually begins with the jury instructions. And in this case... Well, pausing right there, I anticipate you'll be arguing 29A should have been the instruction given. And Mr. Ginsky, in his brief, says it's not properly part of the record, and it wasn't sufficiently incorporated and all that. So how do you address that? Well, this court has granted our motion. It was either this court or the trial court. I can't remember. But anyway, our motion to supplement the record has been granted, and it is a part of the record at this time. What does the trial court record show with regard to 29A? You mean in terms of what happened? Well, I mean as far as that was presented to the trial court and ruled upon there? Yes. What happened was 29, which was defendant's 29, was offered on one day, and that reflected the fact that Dr. Pickett, the emergency room physician, was in fact still a defendant in the case immediately prior to trial. The case then... He had settled, I take it. He was dismissed immediately prior to the trial. And then 29A was submitted... The next day. And the difference between 29 and 29A was the removal of Dr. Pickett. And the trial court ruled on 29A and said the same ruling applies? You know, honestly, Your Honor, I can't remember whether this court ruled on it or the trial court did. Well, at the trial level when it was tendered. Oh, yes, yes. The trial court did rule on that, yes. I just want to make sure that it was... There's a designation in the brief, tendered 3609, refused. I take it that's the trial judge? Yes, yes. I can't imagine that there's any dispute whatsoever that 29A was tendered to the trial judge and refused. The transcript reflects that. 29A is identical to 29 with the exception of the removal of Dr. Pickett. But the difference between Plaintiff's Instruction 9 and Defendant's Instruction 29 and 29A is a matter of the difference between being accurate on the law in Illinois and inaccurate. There is no basis in Illinois law to hold Dr. Nord responsible for any of the injuries regarding Plaintiff's right arm fractures. None whatsoever. There's no claim in the pleadings. Yet, Plaintiff's counsel and the defendant driver insisted that the verdict form which was given to the jury ask for damages from Dr. Nord and Central Illinois Orthopedics for injuries to the fractured right arm. What was the presentation to the trial court on this issue? That is, Mr. Brand tendered it. Mr. Ginsky, I'm assuming, was counseled there. What was the argument as to why 29A, with separating the injured, essentially, that's what we're talking about, isn't that? Uh-huh. Shouldn't be given. Well, it wasn't that Dr. Nord was responsible for injuries to the arm. It was that it was confusing. That was it? Yeah. Now, we see a lot of stuff from Judge Bell's, and he seems to be pretty sharp. Did he explain his thinking about this while he brought that argument? I don't recall an explanation. Were you the trial judge? I mean, trial lawyer? No. Mr. Brand was. Mr. Brand was a trial lawyer. But there isn't any case which could possibly support giving a verdict form which awarded damages to a plaintiff where there's never any claim or any basis for awarding those damages. And that argument was made in front of Judge Bell's? Yes. That's the correct, this is the correct verdict form. It was offered and refused. How long a trial was this? I'll have to look. It wasn't three weeks. I don't think it was three weeks, no. It was a relatively short trial. And the jury instruction conference was held at the end of the case or at the beginning? It was, my recollection is May 5th and 6th were the two dates of the transcript. We have that material in our appendix to our refinery. When you say you have that material, what are you referring to? I'm referring to the trial transcript which reflects the offering of that instruction in the court's ruling. I'll have to forgive our concern about how this occurred. I certainly can forgive your concern. So the argument was it was confusing? Yes. It would be confusing to use 29A? Yes. It would be confusing to ask the jury to separate those things out. And the plaintiff took the position and took the position at closing argument that there was no duty on the part of the plaintiff to separate the injuries relatable to the dislocated finger from those relatable to the fractured forearm. And Franklin, the defendant, was still part of the case? Oh, yes. The whole time. The whole time through the verdict. Franklin didn't appeal. So can I ask you a question, Ms. Kendall? What happens if this case goes back on Nord? She didn't appeal. What happens to the verdict as to Franklin? Does that stand? I believe it does stand with respect to her. Certainly. I mean, you can't reverse the verdict. She's not here. She's not here. What Dr. Nord is asking for is a new trial. Would it be on damages only? Of course not. So you're asking for a trial on liability and on damages. Absolutely. What happened with the cross-claims? There was no verdict at all on the cross-claims. By cross-claims, you mean the apportionment of damages? The contribution claims that each had against each other. The jury found that Christine Franklin was 75% negligent and that Dr. Nord was 25% negligent. Right, but they were separate. I thought they were instructed that if they found that Nord contributed to maybe that took care of everything. There were two other verdict forms, B and C. I don't have them with me. Well, Your Honor, I think what we need to be concerned about are the verdict forms that are at issue here. The one that the jury returned. They only returned the one that we're asking. Right. Okay. And the one that we are contending the court dared and refused to return. I want to ask you another question. With respect to the index finger, what's your position with respect to whether Nord and Franklin are joint tortfusers with respect to that injury? Yes, the plaintiff can seek damages. Christine Franklin, as the initial tortfuser, is responsible for all the injuries flowing from that car accident. And that wasn't disputed. So we don't have – we think that, of course, she's responsible for the injuries to the index finger as well. But it doesn't go back the other way. Dr. Nord isn't responsible for the fractures to the arm. I understand that. My question is, as to the index finger, do you concede or do you contest that they are joint tortfusers as to the index finger? Well, if by joint tortfusers you mean can the plaintiff recover damages against either one or both, I guess that, yes. As opposed to a subsequent tortfuser. Well, I may be missing something. I mean, obviously, Nord wasn't involved in the initial car accident. I guess – no, as opposed to a subsequent tortfuser, I guess, yes, he would be. And that's what we said in our brief, as a matter of fact. I understand what you're saying now. So Franklin caused the initial injury to the finger and the forearm. Right. And the accusation of plaintiff is that Dr. Nord's negligence caused or exacerbated or was a subsequent tort of medical malpractice. Dr. Nord did not diagnose it soon enough. That's what the plaintiff says. Okay. So – period. And, yes, he would be a subsequent tortfuser, not a concurrent or joint tortfuser. Subsequent tortfuser. Right. Now – Except opposition, of course, is that there was no negligence. I understand. Now, here's the question I have. With the regiment of IPI, civil and criminal, these sorts of issues shouldn't be arising. I was chairman of the IPI criminal committee for five years, and the whole purpose of that committee was to make sure that we had cookbook-ready stuff pulled off the shelf. If you've got a burglary case, sell your instructions, 20 minutes' worth of discussion to see if it applies. But there shouldn't be issues. I don't have as much experience with IPI civil, but I understand it's supposed to be the same way, and generally speaking, it is. Now, what's the story? How didn't the IPI civil committee have an instruction that addresses this situation, or the trial judge ignore it? What do we have here? Well, this is a verdict form issue. Yeah, well, the verdict forms are a creature of instructions. Verdict forms fill IPI criminal as well. Well, there cannot be a valid IPI instruction that does not allow you to distinguish between two separate injuries. Did an IPI civil at the time of this trial deal with this situation? For instance, maybe I'm asking this question badly. That might be the problem. Let me restate it. Is it B4503A, which is supposed to be the instruction given that each of you say and somehow got modified, or what happened here? Well, you're talking about, it's the same instruction. It's just how many injuries and how many parties. So what the plaintiff, it's the same form. It's just our instruction said there was an injury to the arm. Do you think defendant Christine, what's her name, Franklin, was responsible? If so, here are the damages. There was an injury to the dislocated finger. Do you think Christine Franklin was responsible? Do you think Dr. North was responsible? And here's the damages. It's not a different form. It's just a different injury. And it's wrong, wrong, clearly wrong on Illinois law to hold Dr. North responsible. Don't the committee comments, the use of IPI B4503A address multiple injuries? Certainly this is not the first case with multiple injuries. It's not. I cited many other cases in my brief. It's talking about how when there are multiple injuries, use in effect 29A? Well, I don't know. Use the form you used. They weren't instruction cases, but it was like who can be responsible for damages? My question was what about committee notes to the instruction itself? Did they address this? I don't recall your honor. I would be happy to review that and submit a brief if you would like me to. I'll check. So it's the same instruction, but the problem is as you submitted it, it addressed separate injuries. As they submitted it, it was just an injury to the plaintiff. It held Dr. North responsible for injuries that the plaintiff never claimed he was responsible for. It's that simple. Just that simple. There was a verdict against Dr. North for damages which included injuries to plaintiff's right arm fractures. And although he treated them, the plaintiff has never contended that there was anything negligent in any way. Is there some question that this case presents about the timeliness or the applicability of the correct IPI civil instruction? If there is, I haven't heard that from the plaintiff. So your position is it's IPIV-4503A and you just have to use it for multiple injuries? Correct. Wasn't there an issue about the giving of IPI-303 as well? There was, your honor. What was the issue in that case? Well, that was the issue of whether you can give the new insurance instruction without any mention of insurance. That's addressed at a trial court's discretion, whether or not the issue is sufficiently present? Well, to be honest with you, your honor, that was, although I think that's an important issue, and I've seen it in every case that I'm handling right now, because of the importance of the other issues, it was not one I elected to address in oral arguments. If the court would prefer to discuss that. I think a more important jury instruction issue is Plaintiff's Instruction 3 and Defendant's Instruction 25. That is also a new instruction, like the insurance instruction. What is that? That directs the jury to basically use their own judgment about expert testimony. Our position is that it conflicts with IPI-105.05, which says that the only way you can decide an issue of professional negligence is by expert testimony. Isn't that instruction really getting at the standard of care? You have to have expert testimony for standard of care. But like in this case, where you have Cooley, who's a radiologist, who says, I looked at the x-rays, I didn't see the fracture the first time, but when I look at it now, I see it. And you have Cohen, who says, you can't see it, it's not diagnostic on the first one. Why can't the jury, that first instruction you're talking about, why can't the jury say, I accept this expert's testimony and I don't accept that expert's testimony, like in any other case? Because the instruction basically suggests that they disregard expert testimony and can use, quote, common sense. And let me explain to you why that's so serious. The opening statement by Mr. Ginsky said to the jury, look, this is exhibit, Plaintiff's Exhibit 4, see, see the dislocated fracture here, see it? It asked the jury to see that fracture dislocation. That was the first x-ray that was taken in Springfield. Then, Mr. Ginsky moved on and said, see, this is Plaintiff's Exhibit 5. This is Dr. Cooley's x-ray. See, you can see the dislocation right here. Was there an objection to that? Your Honor, we raised that, yes, and we raised that in our post-trial motion. It is not one of the issues I have covered in our brief, but the issue I have covered in our brief ties in to the deference to experts or whether the plaintiff can say, hey, look, you're the jury, you can read this expert just as well. We were not even able to ask Dr. Rotman, Plaintiff's expert, isn't it true, Dr. Rotman, that Dr. Haig looked at Plaintiff's Exhibit 4 and did not see any finger dislocation? Why is the negligence of any other doctor relevant? The whole plaintiff's entire case rested on Dr. Nord's failure to read Plaintiff's Exhibit 4. Right, but the fact that somebody else doesn't read it either, how does that reflect? And not only that, but Nord never even looked at Haig's report, right? He didn't look at the report, but he looked at the x-ray. Right, he did. And Mr. Ginski, in closing, said, well, look, Dr. Nord looked at Plaintiff's Exhibit 4. He didn't find a dislocation. Dr. Nord looked at Plaintiff's Exhibit 5. He didn't find a dislocation. When do we begin conducting a medical negligence trial when we hold that medical evidence, Plaintiff's medical history is not admissible, and we allow Plaintiff to keep out the findings in x-ray reports because it conflicts with the Plaintiff's theory of the case, which was that Dr. Nord, but no one else, But wait a second. Where does the no one else come from? That's just this pope's question in mind too. That is, why can't Plaintiff properly argue Dr. Nord should have seen this and missed it, and why does it matter unless he says everyone else saw it and Dr. Nord missed it? That would be different. Now you're talking about asserting a fact, which it seems to me you could be able to rebut. But if this theory is Dr. Nord missed it, why is it even relevant, whether some other doctor may have missed it too? Well, Dr. Nord's theory of the case was that, hey, you know, he's diagnosed like dislocated fingers all the time, but he's diagnosed them by looking at an x-ray  Dr. Nord wasn't able to present his theory of the case, which was that this is difficult. It's not visible. Well, no, he could have presented all that, but you're talking about a specific fact and to support it, hey, look at this guy missed it too. How is that relevant? Because Dr. Cooley himself said that a radiologist is better able than Dr. Nord to read that x-ray. Wasn't that testimony before the jury? Yes, but what wasn't was the fact that Dr. Haig missed it and Dr. Cooley missed it. No, that was before the jury. Cooley testified that he missed it. He did. He testified. So the jury heard that he missed it the first time. A little bit. And so here's, yes, if we can, if Cooley gets to say that once, does that mean that the ruling on plaintiff's motion limiting three, keeping out Dr. Haig's x-ray report, and Cooley's report was admitted and published to the jury. And Judge Bell said it was duplicative and cumulative to allow Haig's in. Haig never testified. Cooley testified. Well, if you read the entire trial transcript, you would have heard Mr. Ginsky explaining that Cooley wouldn't have been looking for it because it was post-surgical. I did read the entire transcript. Well, then, Your Honor, you would see that Dr. Haig was looking to determine whether there was any injury to the plaintiff. It was not post-surgical. There's no way to explain away the fact that Dr. Haig did not find that injury. But Haig did not testify. Haig was not a witness. But the medical records of the plaintiff were admitted into evidence. Let me be more direct. Here's the problem, it seems, I have with this argument you're making. Plaintiff's theory is Nord was negligent because he should have found this dislocation. Why does it matter if, assuming his theory is, well, Haig was negligent too. He didn't see it either. That seems to be your defense. Why does that follow? I don't agree that that's our defense. Well, at least in this regard. What's the relevancy of another guy missing it? It's highly relevant if no one who examined the plaintiff's x-rays identified it, including the person who was simply looking at the entire plaintiff. You know, you can have expert witnesses talking about whether this should have been seen or not. But that a particular guy didn't see it, I'm having real trouble understanding the relevancy of that when maybe, you know, it's the kind of story, if the theory is, well, Nord was negligent, and look, I got another guy who missed it. He was negligent too, so I guess Nord isn't anymore. That seems to be the kind of argument that you're making here. On relevancy grounds, I don't follow it. I honestly am unaware of why her initial medical record, which was admitted, would be inadmissible on any basis. Well, you know, medical records, I think, have to be scoured to find out why some particular portion of it is going to be offered. It was admitted. It was already admitted. So why do we sanitize the case and not allow trial counsel to cross-examine Dr. Rotman? The question is, if it would be negligence for him to have missed it, let's assume that for the moment. I'm the trial judge. Why is that something that is relevant to this case? How is it something that establishes it's more probably true or not true that Nord was negligent? What it establishes is a physical fact, a physical fact, which is that if you look at Plaintiff's Exhibit 4, you don't see it. No, it establishes that Haig looked at it and he didn't see it. And it establishes that no one identified who he looks at for a trial and he says, I see it there now. My attention wasn't directed there. I was looking post-operatively to see if the bones were separated. That's exactly why that X-ray report Nord asked him to do. That's exactly why that X-ray report Haig's is so important. Because the explanation you just gave is exactly how Plaintiff was able to dismiss away the fact that Dr. Cooley didn't recognize it either because he wasn't looking for it. But Cooley said at trial, I see it now on Plaintiff's Exhibit 4. I see it also on Plaintiff's Exhibit 5, which was the X-ray Cooley read at St. Joseph's. Cooley saw it everywhere. Right. He did. Well, he testified to that. Right. That's why that ruling was so damaging because you got the post-litigation view, but you didn't get the full pre-litigation view. But you can have an expert testify about this difficulty. Indeed, maybe Haig could have testified about how you read X-rays and how it works and what you look for and all the rest of that, and leave that for a jury to conclude whether or not, in the face of all this evidence, a Nord was negligent, as the Plaintiff says, for not picking up the dislocation early on. But I'm still troubled by the idea that, and the best evidence of that is, I missed it, says Haig. Well, I don't know why we care that you missed it, Dr. Haig. And that just seems to be part of this case that I have trouble on relevancy grounds with. But time's up, and we've gone a long way. Thank you, counsel. Thank you. Mr. Ginsburg. Thank you. May it please the Court, counsel, with reference to the insurance instruction, it's not an abuse of discretion for Judge Belz to have independent instruction. Comments on use specifically indicate that it is to be used, because it's not confined just to liability insurance. Most of the cases, the appellate opinions, construing that new instruction have come down since this case was briefed. They arise primarily from the first and second districts, and, frankly, the cases go both ways. It's not reversible error to use it. It's not reversible error to give it. I don't think we get anywhere on that. With respect to the argument that Dr. Haig missed this dislocation fracture also, it is not relevant. I think that the Court has hit the nail on the head in that regard. What about the instruction, which is the primary issue, Mr. Ginsky? I asked Ms. Kendall to capture the discussion at trial on why the multiple injury instruction, 29A, was rejected. Confusing was apparently what you argued and the trial judge bought. I don't understand it. Explain to me why that is the better and more accurate instruction than the one Mr. Brandt tended. Because if you look at page 7 of the plaintiff's brief, we've got set forth what was tendered, and that was 29, not 29A, 29. But the next day 29A was submitted, Mr. Ginsky. And they took it out. It's in the transcript. No, 29A is in the transcript with respect to Mr. Brandt tendering it to the bench just before closing arguments. With the corrected version taking Dr. Pickett out. But it was essentially the same verdict form. I don't know that. Plaintiff was never given 29A. That's why plaintiff went to the record on appeal and tried to determine exactly what 29A said. And it wasn't in the record. And it puts plaintiff at a significant disadvantage to have to try to come and argue before this court on an issue that plaintiff was not allowed to brief. Because 29A was not a part of the record. Plaintiff never received it at the time of trial. There is a transcript suggesting that it was tendered to Judge Bells, but it's not in the court file. It's not a part of the record. Well, what does that mean? Hasn't it been submitted to this court? Does Ms. Kendall make it up? Transcript of the proceedings below? I don't understand what you just said. I'm not suggesting that the transcript was made up. The transcript says what the transcript says. Okay, and what does it say? It says that Mr. Brandt is tendering to the court 29A. That was never tendered to the plaintiff, and it was never reflected in the court file. So whether it was tendered and missed the bench and fell down in front, I don't know. Whether it was found its way into the court file at Sengman County and then subsequently was lost, I don't know. All that I can tell you is that when confronted with the brief prepared by Defendant Nord in this case, arguing that 29A is an accurate representation of the law, and it's not, the plaintiff does not concede that. So when 29 was submitted, your objection was it refers to Pickett, and that's bad? I doubt that. If I may approach, Your Honor, 29A is set forth. We have both. On page 7. We have 29 and 29A. And then A14. You look at A14, appendix 14 of the reply brief, you'll see the argument that's made actually by Mr. Kepke, in which I joined. Now that's on 29. But if you read that and then you look at 29, and even assuming for the sake of argument 29A is subsequently tendered, which is an open question, but even assuming that it is, if you look at verdict form A as submitted by Mr. Brandt, it is very confusing. It goes on for more than two pages. What's confusing about it? It almost appears as if your, well, my fear, quite frankly, with respect to the confusion, and that was my position at trial, that it's confusing, is that if that had been completed, I believe that we'd be here on appeal with respect to an argument that there was double recovery. That by virtue of the fact that it went through and itemized. Who would be arguing it? The defendant? Yes. Because the trial court used the instruction they gave? I don't think that would get real far, Mr. Kinski. No. So what other argument do you have for us? Well, the primary argument is that the suggestion is Dr. Nord is stuck paying for an injury that he didn't cause, and there's absolutely no proof of that. Except the instruction. Yeah. No. Which makes no distinction between Dr. Nord and Franklin on the injury. No, it does. It does. That's what the percentage of fault is exactly designed to do. We have two different injuries. That's why we go through allocations. We have two different injuries, don't we? Pardon? We have two different injuries here, don't we? We do. One of which is joint and several. One of which is indivisible. It does. And the argument that I made at the closing argument was that we don't have the obligation to go through the medical bills and differentiate. Because, as a matter of fact, you can't. A lot of the care that was received after the dislocated finger was diagnosed was care for both injuries. Planned Parenthood does not have the obligation to go through the medical bills and try to segregate what exactly. If the court were to adopt that argument, can you imagine the practical ramifications of that as we go through trial? Every single bill would have to be analyzed as to, well, doctor, with respect to that radiology bill, you took a view of both the arm and the hand. Now, the bill for the radiology is a total of $150. How much of that is for the hand? How much of that is for the arm? I mean, if we're going to go down that road, we're headed for disaster. That's why E45 specifically says you will allocate on a percentage basis, based upon what you've heard from the witness stand, as to how much of these injuries each of these individuals is responsible for. And what strikes me is rather telling, is that with respect to these two injuries, the double fracture of the ulna and the radius healed, and it was mid-arm. If you had a fracture at a joint, you're going to have problems subsequently. If you have a mid-shaft fracture, once it heals, it heals. Her arm is fine. Her problem is, and continues to be, the lack of function of the right hand. The index finger is twisted to the right, it's straight, and it has really no function at all. It gets in the way. And one of the considerations that was made throughout the trial was just take it off at the knuckle and maybe you're better off. But, Mr. Kinski, doesn't your verdict form hold Dr. Nord liable for 25% of the entire amount of her injuries? No. No. How does it not? If I were a juror, why wouldn't I think that's what's going on? Because there's other jury instructions that were given to the jury that specifically explain that Dr. Nord is only responsible for the misdiagnosis with respect to the hand. But where do they get to show what that means on the verdict form? They're not even given the opportunity. On the percentage of fault. In this case, the most significant injury, the one that continues to be disabling to a certain extent, is the hand injury. I read the transcript. The whole trial seemed to focus on the index finger. I agree with that. To me, this is just an opinion after I've read the entire trial and looking at these verdict forms. I think perhaps Dr. Nord would have been found even to have more liability and more of the damages assessed against the index finger if it had been separated out. But regardless, I don't see how your verdict form accurately reflects the case law in Illinois, which says when you have malpractice and you've got two separate injuries, why is the doctor liable for anything to do with that forearm fracture? There's no showing that he was, Your Honor. If there had been 100% liability assessed to Dr. Nord and zero to Christine Franklin as the driver, I could understand the point that you're trying to assert. But your point is absolutely lost on me when the 25% that is assessed against Dr. Nord, the 25% of the verdict form, or the total verdict, is less than the medical expenses incurred for the index finger. How can you suggest that Dr. Nord has to pay for an injury to the forearm when what he has assessed in total liability is less than the medical expenses for the finger? This is a practical thing, and you all probably know it. We have no idea what the insurance coverage was on Franklin. So with the 25% liability under the statute, isn't Nord responsible for all of it if Franklin doesn't pay? If we were to go down that road, as a practical matter, Christine Franklin tended to policy limits. Those were accepted and those were given. We could have collected everything from Christine Franklin and forced Christine Franklin to be in here defending against Dr. Nord. We chose not to do that. We indicated that we would accept the policy limits and we would attempt to collect the balance from Dr. Nord. But I don't understand the argument or the suggestion. Let me put it this way. You've conceded, I think, that we have multiple injuries here. The injury to the arm for which Dr. Nord is not responsible at all. And then the finger dislocation failure, as you assert to properly treat that and so forth. But as I look at your verdict form, paragraph that says second, reads following. Assuming that 100% represents the total combined fault of all persons or entities who fault proximately cause Don Barton, FKA Don Barnett's injury, singular. Including any defendant whom you found liable, we find the percentage of fault attributed to each as follows. So when the jury is called upon at the key moment here to assess percentages, you use language of one injury in this instruction. How can that be correct? Because the percentage accounts for, the percentage breakdown accounts for the assessment of liability with respect to the injury or injuries. But it doesn't say injury or injuries. I don't think that's confusing, Your Honor. I really don't. And if you read that in conjunction with the other instructions that were given, the other instructions that were given clearly indicate that Dr. Nord was not responsible for the arm, that he's responsible for the dislocated finger. This is your instruction to which Mr. Brandt objected. Why didn't you say injury or injuries or use the plural? I tendered the instruction that I thought would be least confusing to the jury that complied with B4501. I objected to Mr. Brandt's 29, tender 29, because it was incorrect. 29A, again, is up in the air. So the jury's looking at this, well, who caused her injury? I disagree, Your Honor. You don't think that? No. I think you have to read the jury instructions as a whole, and I think that's what the jury does. When we polled jurors afterwards, we're struck by the fact that the first thing they do after selecting a foreperson is go through carefully all of the instructions. And you're picking out one instruction and suggesting that it is improper when, in fact, it is the IPI 4501 instruction that's to be given for multiple torque teasers. Well, let's go back and look at the first paragraph, too. There it says the disfigurement resulting from the injury singular, and then the next paragraph says the pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries, plural. Nothing confusing about this? We have injuries, we have injury, we have injury, all in your instruction to the jury on what to do? My instruction says whatever it says. I'm not disputing that. What's in the record with respect to the first tender is inaccurate. But I don't believe that it's confusing because the apportionment is exactly what the percentage of fault is designed to do. That's why that form was adopted in this state so that we don't have to go down this road. How can we be satisfied that the jury understood from this verdict form that it was addressing only the disfigurement injury or the problems caused by the finger and that they weren't concerned with at all the forearm injuries with regard to Dr. Nord? We know that for a fact, Your Honor, because what was assessed in terms of total dollar liability for Dr. Nord was less than the medical expenses of standing alone for the finger. Well, what if they thought Dr. Nord wasn't guilty of anything, but a bad thing happened to your client, and Franklin, who was the co-defendant, was there, and we have to give Ms. Auten some money for this bad thing. And so we're going to divide it up this fashion. That is not a concern either for the simple fact that Mr. Brandt tendered verdict form B, which is in favor of Dr. Nord and against, gone on and argued that if they found no negligence, they would have filled out verdict form B. So there's a special interrogatory? No, there's not a special verdict form. There's verdict form A for the plaintiff, verdict form B for Dr. Nord. So if they found no negligence on behalf of Dr. Nord, they fill out verdict form B. Mr. Ginsburg, the jury went out at 1236 and came back at 155 with a $307,000 verdict. I've never seen that high a verdict in Sangamon County, although I'm aware of one, but I've certainly never seen a jury come back that fast with the kind of issues that we're in this case. The issues aren't as complex as might be suggested. The issue we're talking about, I think, is complex. I should have brought the film and put it up so that the court could see it. The dislocation fracture was so obvious. It was so obvious that two radiologists missed it. Yeah, they were defendants when they testified, Your Honor. Dr. Haig? Dr. Haig was a defendant when he was deposed. Oh, you don't sit in the trial. Pardon? I thought you meant in the trial. No, he was initially a defendant because he did miss it. Is that really a proper argument to show films to the jury and say, Look here? Should we ask the jury not to look at photographs? Should we ask the jury not to look at? Well, hasn't the Supreme Court said, and I guess radiology looks to me to be a specialty and requires expertise, are we really going to say, Hey, look here, folks. See, you can see it. It reminds me of the old Woody Allen movie where his parents, the brain surgeons, said, Here, you can see it here. Just take the scalpel. It's not that hard. Do that. Do that, yeah. But it depends on the x-ray. For instance, if we had the x-ray of the comminuted fracture of the radius and the ulna and you were to hold that up, I think we're making a huge mistake to say to a jury, You can't interpret that as two broken bones when it's so obvious that they're broken. I mean, you're asking the jury to do this. I don't know that that's a good idea. So why isn't it relevant what Dr. Higgs put in his report? Why shouldn't that have come into evidence? Because Dr. Higgs' negligence wasn't before the jury. No radiologist was before the jury. Plus, a radiologist is not a clinician, Your Honor. With all due respect, Dr. Higgs never saw the patient. Dr. Cooley never saw the patient. They never palpated the hand. They never asked questions about how did this injury occur. They were never told, My finger really hurts. My hand, entire hand hurts. That's Dr. Nord. He's the clinician. And the radiologists are asked to interpret and confirm, or not confirm, the presence of a both bone fracture at the forum. That's what they're asked to do. And they did it. It's ridiculous to say that Dr. Higgs, what he did or didn't do here, has any relevance whatsoever. But the answer to your question is, Dr. Higgs was a defendant. And when he was deposed, of course he said, There's no fracture there. I've never had a doctor say, I blew that one. Thank you. Thank you, counsel. Very briefly, Your Honor. Defendant's instruction 29, or 29A, is the same instruction. It is not confusing. It is not what? Confusing, which is the only argument that the plaintiff and the defendant driver's counsel made. It is an accurate statement of the law, and the trial court gave no reason whatsoever for refusing it. That is a fundamental error which affected the verdict in this case. Under Illinois law, Dr. Nord cannot be held responsible for the fractures to the plaintiff's right arm. We ask this court to reverse the verdict of the jury and to remand for a new trial. If no radiologist was before the jury, why was Dr. Higgs' failure to diagnose the finger fracture relevant? Why should that have come in? Your Honor, those x-ray reports, well, the x-rays themselves, were put before the jury out of the box, right out of the box. They were held up. I mean, read the opening statement. It's almost the very first thing the plaintiff says is, here's Plaintiff's Exhibit 4. Now, if Plaintiff's Exhibit 4 is relevant, it's not more relevant for the jury to do, as Mr. Genske says, look at it and see for themselves where the fractures are. It's not more relevant than whether a qualified radiologist looked and was unable to detect a dislocated finger. This was not a fair playing field. Well, isn't the danger of having let that in, the fact that the jury would go, oh, well, that radiologist missed it. He's the guy who's responsible here. No one was pointing the finger at Dr. Higgs. Isn't that the danger? I don't think that danger outweighs the unfairness of allowing the plaintiff to parade Exhibit 4 over and over and over again before the jury, but to keep out the fact that Exhibit 4 was not read by the radiologist at the hospital following the accident to reveal the dislocated finger. We are looking for the truth. We're looking for a fair playing field. It wasn't the case here, and we ask for this court to reverse. Thank you, counsel. We'll take this matter under advisement to recess until the next case. Thank you.